**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EVAN CHERRY,

        Plaintiff,

        v.

OFFICER MARK HANNA,
OFFICER FERNANDO ONTANON &
THE CITY OF CHICAGO,

        Defendants.

Case No. 1:24-cv-07801

Judge John Robert Blakey

**MEMORANDUM OPINION AND ORDER**

## I.    Introduction

Plaintiff Evan J. Cherry sues Chicago Police Officers Mark M. Hanna and Fernando Ontanon ("Defendant Officers") and the City of Chicago (collectively, "Defendants"), alleging civil rights violations in connection with the Defendant Officers' stop and search of Plaintiff's car and subsequent initiation of criminal charges against Plaintiff, [28]. Defendants jointly move to dismiss all of Plaintiff's claims of Plaintiff's complaint, [36]. For the reasons explained below, the Court grants Defendants' motion and dismisses Plaintiff's claims with prejudice.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the Court accepts all factual

allegations in the complaint as true and draws all inferences in the plaintiff's favor. *Esco v. City of Chicago*, 107 F.4th 673, 679 (7th Cir. 2024). Courts are not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are not enough. *Id*. The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Esco*, 107 F.4th at 679 (citing *Twombly*, 550 U.S. at 555). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 556).

## III.   Factual Background

### A.   The Complaint's Allegations

Plaintiff initiated this lawsuit on August 28, 2024 [1], filed a first amended complaint on September 30, 2024 [7], and then a second amended complaint on December 13, 2024, [28]. None of the complaints specify a particular claim, labeling the single asserted claim simply, "CLAIM," [28] at 2.[1]

---

[1] In his response to Defendants' motion to dismiss, he indicates that he "filed the operative complaint stating a malicious prosecution claim under the Fourth Amendment and Illinois law." [41] at 1.

In support of the "claim," the operative complaint [28], alleges that, on December 23, 2021, someone stole Plaintiff's car, and, that same day, he reported it stolen to the Chicago Police Department. [28] ¶¶ 6–7. On January 7, 2022, Plaintiff located and confiscated the vehicle and immediately reported to the Chicago Police Department that he had recovered the car. *Id.* ¶¶ 8–9. A short time later, Defendant Officers conducted a traffic stop on the car, while Plaintiff was driving in Chicago. *Id.* ¶¶ 10–11. Although the officers allegedly had "no legal cause to stop Plaintiff's vehicle," Defendant Hanna instructed Plaintiff to exit the vehicle and then placed Plaintiff in handcuffs. *Id.* ¶¶ 12–16. Defendant Hanna then asked Plaintiff for his identification card, and Plaintiff informed Defendant Hanna that it was inside his vehicle. *Id.* ¶¶ 17–18. Defendant Hanna retrieved Plaintiff's identification card and confirmed that Plaintiff was the lawful owner of the vehicle. *Id.* ¶¶ 19–20. Yet Hanna nonetheless searched Plaintiff's vehicle, even though he allegedly lacked "legal cause" to do so. Id. ¶¶ 21–22.

During the search, Defendant Hanna found pills, which he believed to be a drug known as "molly."[2] *Id.* ¶ 23. Plaintiff told the Defendant Officers he knew nothing about any drugs in the vehicle, as he had just recovered his previously stolen vehicle about 20 minutes before the stop. *Id.* ¶ 24. Plaintiff alleges that, despite this statement, he also told the Officers the pills were "molly" because they suggested they would release him and "be lenient" if he identified the pills as such. *Id.* ¶¶ 25–26.

---

[2] Ostensibly, the term "molly" refers to MDMA, methylenedioxymethamphetamine (a controlled substance).

Plaintiff further alleges that, even though the Officers should have known the pills were not Plaintiff's, they nonetheless transported Plaintiff to the police station and "initiated charges against Plaintiff under 720 ILL. COMP. STAT. 570/402(a)(7.5)(A)(i), and 720 ILL. COMP. STAT. 570/402(a)(7.5)(A)(ii)." *Id.* ¶¶ 27–30. Plaintiff remained detained at the police station until approximately 12:30 p.m. the following day, when he was transported to the Circuit Court of Cook County for a probable cause hearing. *Id.* ¶¶ 32–33. Plaintiff was released on bail under various bond conditions at approximately 7:30 p.m. that same day. *Id.* ¶ 35.

On January 27, 2022, the Illinois State Police Crime Lab in Chicago reported that the pills retrieved from Plaintiff's car were not molly. *Id.* ¶ 36.[3] On April 22, 2024, the Cook County State's Attorney's Office dismissed all charges against Plaintiff, allegedly "signifying his innocence." *Id.* ¶ 40.

### B.    Defendant Officers' Body Worn Camera Footage

The January 7, 2022 incident described in Plaintiff's complaint was also captured by the Defendant Officers' body worn cameras. In moving to dismiss Plaintiff's claim, Defendants argue that his allegations mischaracterize many of the facts underlying the incident, and that the body-worn camera (BWC) footage captured by Defendant Hanna undermines any claim for relief. [36] at 5–6. Defendants attached the BWC footage in their motion and argue that the footage depicts the entirety of the interaction that gives rise to the complaint. [36-2]; [46] at 3.

---

[3] As discussed further below, the fact that the pills turned out to be fentanyl and heroin, rather than molly, remains irrelevant to the Court's analysis.

4

Plaintiff does not challenge the accuracy or content of the BWC footage, [41], but he does argue that consideration of such footage remains improper as to the motion to dismiss. Thus, before turning to the merits of the parties' arguments on dismissal, this Court must discuss the footage, including the propriety of considering it at this stage of the proceedings.

On a motion to dismiss, a court must accept allegations as true and "construe all inferences in the plaintiff's favor." *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). In doing so, a court may also "consider any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). This includes exhibits attached to the complaint or referenced therein, "if they are central to the claim." *Id.*

In some cases, determining whether a video or exhibit remains "central to the claim" can be challenging. *See, e.g., Brown v. City of Chi.*, 21-cv-1397, 2022 WL 865796, at *3–5 (N.D. Ill. Mar. 23, 2022) (declining to consider body camera footage that plaintiff did not attach to his complaint and that does not show the entire incident); *Hyung Seok Koh v. Graf*, No. 11-cv-2605, 2013 WL 5348326, at *9 (N.D. Ill. Sept. 24, 2013) (considering footage of a police interrogation on a motion to dismiss where the footage captured most of the questioning and the interrogation was central to the plaintiff's claims). This matter, however, is not one of the challenging cases.

Plaintiff's entire complaint remains predicated upon his brief encounter with the Defendant officers (which he describes in his allegations), and the BWC depiction of those events remains central to his claim. Indeed, to prevail at this stage, Plaintiff

must make a plausible showing that in this encounter the officers lacked a constitutionally sufficient basis to stop him, handcuff him, search his car, and/or arrest him.[4] Consequently, in this case, the BWC footage documenting the encounter may properly be considered, even on a motion to dismiss. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (recognizing that the aim of the exception allowing courts to consider documents central to a claim "is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.").

Moreover, this Court may also take judicial notice of "facts in the public record that are 'not subject to reasonable dispute' and 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Johnson v. McDonald*, No. 23 C 3200, 2025 WL 965703, at *2 (N.D. Ill. Mar. 31, 2025) (quoting Fed. R. Evid. 201(b)(2)). Thus, even at this early stage of the proceedings, where the officers' body worn camera footage "utterly discredits" the plaintiff's account, the trial court need not "afford customary deference to the non-movant's averments." *Id.* (quoting *Luczynski v. Joroan*, No. 23-cv-17184, 2024 WL 3106101, at *2 (N.D. Ill. June 24, 2024); *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). The Seventh Circuit has explicitly instructed that "when the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when

---

[4] Although Plaintiff alleges that the Officers lacked "legal cause" to stop him, [28] ¶ 12, to instruct him to exit the vehicle, *id.* ¶ 14, to place him in handcuffs, *id.* ¶ 16, to search his car, *id.* ¶ 22, to transport him to the police station, *id.* ¶ 29, to initiate charges against him, *id.* ¶ 31, or to prosecute him, *id.* ¶ 39, such allegations remain legal conclusions, which this Court need not accept. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016). As a result, the Court may also take judicial notice of the footage when assessing the plausibility of Plaintiff's claims. *See also Bogie*, 705 F.3d at 609 (if "an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.") (citing *Forrest*, 507 F.3d at 542); *Esco v. City of Chicago*, 651 F. Supp. 3d 917, 919–20 (N.D. Ill. 2023), *aff'd*, 107 F.4th 673 (7th Cir. 2024) (courts remain "free to consider any facts set forth in the complaint that undermine the plaintiff's claim, including documents or other materials referenced in the pleading if they are central to the claim, including video footage that shows in real time the content and context of the alleged wrongs.").

Having determined that it may properly consider the BWC footage, this Court turns to the substance of the recording itself. The BWC footage shows that, at 10:17 p.m. on January 7, 2022, Officer Hanna pulled his squad car in front of a car stopped at a red light, exited his vehicle and approached the stopped car. He asked the person sitting in the driver's seat, who turned out to be Plaintiff, to roll down the window and then asked Plaintiff if he had reported the car as stolen; Plaintiff indicated that he had "something that shows he claimed it." Officer Hanna asked Plaintiff if he had a firearm on him (to which Plaintiff said, "no") and asked Plaintiff for his name (which Plaintiff provided). At that time, dispatch can plainly be heard advising Officer Hanna that the plate was "coming back hot" and then the Officers asked Plaintiff to exit the vehicle and handcuffed Plaintiff, advising him at that time that they were

handcuffing him for safety reasons; Officer Hanna then secured Plaintiff's driver's license and, after looking at it, noted "it's him." Plaintiff then stated, "it's not stolen, sir, I reported it stolen." Officer Hanna then retrieved a bag of pills from the floor of the car, in front of the driver's seat. Plaintiff shook his head "no" and said he just picked the car up. Although he initially indicated that the pills were not his, Plaintiff then changed his story and indicated that the pills were "molly." At this point, the Officers then placed Plaintiff under arrest and placed him in their squad car. They then searched the car and found a significant amount of additional molly (Officer Hanna noted on the video several times, "that's a lot of molly"). The BWC footage ends at 10:28 p.m.; the entire encounter lasted approximately 13 minutes.

Having carefully reviewed the footage in the light most favorable to Plaintiff, the Court finds that the audio/video captured by Officer Hanna's BWC directly contradicts many of Plaintiff's allegations and undermines his malicious prosecution claim. For example, while Plaintiff alleges there was no legal cause to conduct a traffic stop, the BWC footage clearly shows his vehicle was still reported as stolen in the Chicago Police LEADS system. *See* [28] ¶ 12; [36-2] at 2:33–2:40 (confirmed again when the radio dispatcher reported the vehicle came back "hot"). Likewise, Plaintiff alleges Defendants "manipulated" him into stating the pills were "molly" in exchange for leniency, but the BWC footage refutes that allegation: after picking up the pills, Defendant Hanna stated that they looked like "molly" or heroin. [28] ¶ 25; [36-2] at 4:00–4:10. Plaintiff initially denied knowing about the pills, to which Defendant Hanna asked Plaintiff, "are you going to tell me what it is, or do we have to do a field

8

test and all that?" [36-2] at 4:10-4:45. Plaintiff then voluntarily responded, "it's molly, sir, you can throw it." *Id.* Defendant Hanna then said that if the pills were fentanyl, it would be a serious charge, and Plaintiff once again stated "it's molly, sir, you can throw it." *Id.* The recorded conversation contradicts Plaintiff's allegation that the officers said anything about leniency, and the footage shows nothing that can plausibly be construed as "manipulation." *Id.*

Unlike a "fast-moving, chaotic" arrest where BWC footage may plausibly only show parts of a series of events, this traffic stop remained calm and orderly; Plaintiff offers no indication or argument that the video is incomplete, misleading or unrepresentative of the entire series of relevant events. *Cf. Flores Delgado v. City of Chicago*, 547 F. Supp. 3d 824, 827, 831 (N.D. Ill. 2021) (declining to consider BWC footage from a "fast-moving, chaotic, and violent" altercation because the footage did not capture all of the officer's movements, and the court could not "definitively find at this stage that the video 'incontrovertibly contradicts' Plaintiff's allegations.") (citation omitted). [36-2]; [41].

The Seventh Circuit has repeatedly addressed how to consider video evidence at a motion to dismiss stage, and the Court will follow its instruction: viewing "the video in a light most favorable to the plaintiff," thus balancing Rule 12(b)(6)'s charge to "accept the plaintiff's well-pleaded facts as true, while also not giving credence to facts that are clearly, definitively, and uncontrovertibly contradicted by video footage." *Esco*, 107 F.4th at 676.

## IV.    Analysis

Plaintiff's § 1983 claims arise from his interaction with Defendant Officers, ultimately resulting in his arrest and prosecution for possession of a controlled substance in Illinois state court.  [28] ¶ 33.  As clarified, Plaintiff seeks to assert federal and state malicious prosecution claims.[5]

The Supreme Court of the United States has "observed that its 'precedents recognize' what it called 'a Fourth Amendment claim under § 1983 for malicious prosecution,'" also referred to as a claim for "unreasonable seizure pursuant to legal process." *Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024) (quoting *Thompson v. Clark*, 596 U.S. 36, 42, 44 (2022)).  The claim arises if the plaintiff was: (1) prosecuted without probable cause; (2) seized because of that prosecution; (3) the prosecution was malicious; and (4) the prosecution was favorably terminated.  *Littlejohn v. City of Chicago*, No. 25 CV 6195, 2026 WL 63708, at *2 (N.D. Ill. Jan. 8, 2026) (citing *Thompson*, 596 U.S. at 42–44).  *See also Lee v. Harris*,

---

[5] To the extent Plaintiff seeks to claim that the Officers' stop, the search of his car, or his arrest violated the Fourth Amendment, those theories would fail. First, for the reasons explained below, Plaintiff cannot plausibly claim that the Officers lacked probable cause to arrest him.  Second, and more importantly, such claims would be time-barred because they accrued on January 7, 2022, and Plaintiff initiated this lawsuit on August 28, 2024, more than seven months too late. *See, e.g., Sroga v. City of Chicago*, No. 14 CV 8316, 2015 WL 9489910, at *2 (N.D. Ill. Dec. 30, 2015) ("The statute of limitations for § 1983 actions is based on state law, which is two years in Illinois" and runs from the time the plaintiff "knows or has reasons to know that his constitutional rights have been violated"; claims for excessive force and unlawful search and seizure accrue immediately at the time of the alleged act.") (citing *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014); *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013); *Evan v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010); *Graham v. Connor*, 490 U.S. 386 (1989)); *Sherrod v. Travis*, No. 13 C 417, 2013 WL 593955, at *5 (N.D. Ill. Feb. 15, 2013) ("the statute of limitations for § 1983 false arrest claims in Illinois is two years")(citing *Wallace v. City of Chicago*, 440 F.3d 421, 424–29 (7th Cir. 2006), *aff'd sub nom. Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  In contrast, Plaintiff's malicious prosecution claim accrued on April 22, 2024, when the State's Attorney's Office dismissed all charges against him. *See* [28] ¶ 40; *Smith v. City of Chicago*, 19-2725, 2022 WL 2752603, at *1 (7th Cir. July 14, 2022) ("A Fourth Amendment claim for malicious prosecution accrues when the underlying criminal prosecution is terminated without a conviction.").

127 F.4th 666, 676 (7th Cir. 2025). The "elements for an Illinois state-law malicious prosecution claim mirror those federal requirements." *Lee*, 127 F.4th at 676 (citing *Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018); *Howard v. Firmand*, 880 N.E.2d 1139, 1142 (Ill. App. Ct. 2007); *Miller v. Rosenberg*, 749 N.E.2d 946, 952 (Ill. 2001).

Here, Plaintiff's allegations that he was arrested and transported to the police station, where he was held overnight, suffice to satisfy the seizure requirement. *See, e.g., Littlejohn*, 2026 WL 63708, at *2 ("being held for several hours in a police station without the ability to leave constitutes a seizure") (citing *Brendlin v. California*, 551 U.S. 249, 254 (2007)). Additionally, his allegation that the Cook County State's Attorney's Office ultimately dropped the charges against him, [28] ¶ 40, suffices to satisfy the third element, that the prosecution ended in his favor.

But his claim nonetheless fails because he cannot allege facts to support the first two elements. Specifically, the BWC footage precludes any claim that a judicial proceeding arising out of Plaintiff's January 7, 2023 arrest was instituted without probable cause. Viewing the footage in the light most favorable to Plaintiff, the Officers had reasonable suspicion to approach Plaintiff's car, and they later had probable cause to arrest him for possession of a controlled substance. As a result, the charges arising out of that arrest remain predicated upon probable cause, and Plaintiff cannot plausibly allege malicious prosecution in violation of the Fourth Amendment.

First, the initial stop remained consistent with the Constitution. Generally, a search or seizure is unreasonable if not based upon probable cause. *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). The Supreme Court, however, created an exception to this rule in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, "police officers may briefly detain a person for investigatory purposes based on the less exacting standard of reasonable suspicion that criminal activity is afoot." *Eymann*, 962 F.3d at 282 (citing *Terry*, 392 U.S. at 21–22). "Reasonable suspicion demands 'only a minimal level of objective justification,' which is something 'more than a hunch but less than probable cause' and significantly less than a preponderance of the evidence." *United States v. Olson*, 41 F.4th 792, 800 (7th Cir. 2022) (*United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019); *United States v. Hill*, 818 F.3d 289, 294 (7th Cir. 2016); *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000)). "Reasonable suspicion amounts to an 'objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) (quoting *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000)). To determine whether reasonable suspicion exists, courts "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Under *Terry*, the constitution permits an "investigative stop" and "brief detention" to give officers a "chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity.'" *United States*

12

*v. Bullock*, 632 F.3d 1004, 1014–15 (7th Cir. 2011) (quoting *United States v. Vega*, 72 F.3d 507, 515 (7th Cir.1995)). For an "investigative stop based upon reasonable suspicion to pass constitutional muster, the investigation following it must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests." *Id.* (citing *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994); *United States v. Sharpe*, 470 U.S. 675, 685–86 (1985)). Legitimate purposes of a *Terry* stop may include "ensuring the safety of the officers or others." *Rabin v. Flynn*, 725 F.3d 628, 633 (7th Cir. 2013).

Here, the BWC footage shows that the Defendant Officers knew from dispatch that the vehicle Plaintiff was sitting in had been reported stolen, and Plaintiff confirmed this fact. [36-2] at 2:33–2:40. Based upon these objective facts, the Officers possessed reasonable suspicion to believe that Plaintiff may have been violating the law. *See* 625 ILL. COMP. STAT. Ann. 5/4-103(a) (making it unlawful for a person "not entitled to the possession of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted.").

Thereafter, during the stop, the officers' conduct, including asking Plaintiff for his name and identification, requesting additional information from dispatch, and handcuffing Plaintiff remained reasonable under *Terry*.[6] *See Rodriguez v. United*

---

[6] To be sure "asking for identification does not amount to a seizure under the Fourth Amendment." *Hall v. City of Chicago,* 953 F.3d 945, 951 (7th Cir. 2020). Indeed, in "the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment"; and "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185–86 (2004) (quoting *INS v. Delgado*, 466 U.S. 210, 216 (1984)).

*States*, 575 U.S. 348, 355 (2015) ("Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop'" and such questioning can "involve checking the driver's license," and "determining whether there are outstanding warrants"); *United States v. Snow*, 656 F.3d 498, 501 (7th Cir. 2011) ("*Terry* recognizes the authority of an officer conducting an investigatory stop to take reasonable steps to assure the safety of himself and others."); *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005) ("as part of the stop, police may ask the vehicle's occupants 'a moderate number of questions' and request their identification."); *United States v. Wilson,* 2 F.3d 226, 231 (7th Cir. 1993) (upholding use of handcuffs in investigatory stop); *Tom v. Voida,* 963 F.2d 952, 957–58 (7th Cir. 1992) (upholding use of handcuffs in investigatory stop).

Likewise, the plain view recovery of suspect narcotics passes constitutional muster. Under well-settle law, the plain view doctrine allows police officers to conduct warrantless seizures of property when "(1) the officer was lawfully present in the place from where he viewed the item, (2) the item was in plain view, and (3) its incriminating nature was immediately apparent." *United States v. Willis*, 37 F.3d 313, 316 (7th Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 142 (1990)). For something to be "immediately apparent" police officers must have probable cause to believe it is "contraband or otherwise linked to criminal activity." *United States v. Cellitti*, 387 F.3d 618, 624 (7th Cir. 2004). The BWC footage shows the pills lying on the floor of the driver's side seat in plain sight. *See* [36-2] at 3:30–4:00; *Willis*, 37 F.3d at 315–16 (finding a firearm near the driver's seat "resting on the center console

14

below the dashboard, partially obscured by heat ducts" to be in plain view of officers who approached the defendant in his vehicle). The Officers immediately observed, based upon their experience and training, that the pills looked like molly, a controlled substance, and their immediate questioning of the pills' substance demonstrated the pills' plainly incriminating nature, as well as Plaintiff's knowledge that those pills (which constituted a controlled substance) were in his car. *See* [36-2] at 4:00; *Valance v. Wisel*, 110 F.3d 1269, 1277 (7th Cir. 1997) (holding that police officers' alarmed reactions to a firearm spotted on the driver's seat floor of a vehicle demonstrated their "reasonable suspicion" that the defendant "may be involved in criminal activity in addition to the traffic violation that occasioned the stop").[7]

Finally, the Officer's ultimate arrest for possession of a controlled substance also remained consistent with the Constitution, as the record shows that it was based upon probable cause. The existence of probable cause defeats a claim for malicious prosecution. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 350 (7th Cir. 2019); *Esco*, 107 F.4th at 676. Probable cause constitutes a "common-sense inquiry" and "exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock v. Brown*, 596 F.3d 406,

---

[7] It is not clear that Plaintiff challenges the search of his car, but to the extent he does, any such challenge would fail. *See, e.g., United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009) (Under "the automobile exception first recognized in *Carroll v. United States*, 267 U.S. 132 (1925)," "where there is probable cause to believe that a vehicle contains contraband or evidence of a crime, law enforcement may conduct a warrantless search of the vehicle. 'Probable cause' exists where based on a totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. McGuire*, 957 F.2d 310, 314–15 (7th Cir. 1992) (The officers arrested the driver and passenger of a car after finding a bag of marijuana hidden under the passenger seat, then inventoried the car for towing; "such warrantless inventory searches do not violate the Fourth Amendment.").

15

411 (7th Cir. 2010). Probable cause requires an objective assessment based upon reasonable conclusions an officer might draw from the totality of the circumstances, not a determination of whether the individual truly engaged in criminal conduct. *Stubbs v. City of Chicago*, 616 F. Supp. 3d 793, 805 (N.D. Ill. 2022) (citing *Young*, 987 F.3d at 644) (internal quotations omitted).

Specific to malicious prosecution, probable cause requires "a statement of facts that would lead a prosecutor of ordinary caution and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Stubbs*, 616 F. Supp. 3d at 805.[8] In his complaint, Plaintiff alleges that he was "charged under" 720 ILL. COMP. STAT. 570/402(a)(7.5)(A), [28] ¶¶ 27–30. The statute makes it unlawful for any person "knowingly to possess a controlled or counterfeit substance or controlled substance analog," including "methylenedioxymethamphetamine or MDMA," commonly referred to as "molly."[9] To possess drugs, in turn, one must have "either 'direct physical control,' which establishes actual possession, or the 'power and intention to exercise dominion and control,' which establishes constructive possession." *United States v. Tate*, 97 F.4th 541, 546–47 (7th Cir. 2024) (quoting *United States v. Walls*, 225 F.3d 858, 864, 867 (7th Cir. 2000)).

---

[8] The dismissal of all state charges against Plaintiff does not affect whether Defendant Officers had probable cause to stop, search, and subsequently arrest Plaintiff; or to initiate the criminal prosecution. *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006) ("Police are entitled to act on information that may be inaccurate and let the court determine whether to credit a suspect's claim of innocence.").

[9] *See* https://www.dea.gov/factsheets/ecstasy-or-mdma-also-known-mollyMDMA (also Known As Molly).

16

The facts here meet such requirements for the purposes of probable cause to initiate the charges against the Plaintiff. As noted above, the BWC footage here shows Plaintiff sitting in the driver's seat of what he says is his car, then shows him exiting the driver's seat; Defendant Hanna then reaches into the vehicle's driver's seat to retrieve Plaintiff's identification card, which sits right where Plaintiff told him it was, and a bag containing pills can clearly be seen on the floor of the driver's seat in plain view; Officer Hanna picks the bag and holds it up to Plaintiff, asking what the pills are. [36-2] at 3:32–4:00. Given this footage, the accuracy of which remains undisputed, the Court finds that the pills were not only in plain view of the Officers but also in close proximity to, and in plain sight of, Plaintiff as well. *See also U.S. v. Morris*, 576 F.3d 661, 664, 668 (7th Cir. 2009) (upholding a finding that a defendant was in close proximity to drugs because he was found leaving a basement where drugs were recovered). Furthermore, Plaintiff was the only passenger in the vehicle, and he admitted the car belonged to him, a fact the Defendant Officers verified on scene. *See* [28] ¶¶ 9–10; [36-2] at 3:40–4:25. Not only did Officer Hanna find the baggie of pills on the floor in front of the driver's seat in Plaintiff's car, right where Plaintiff was sitting, his search of Plaintiff's car also revealed additional stashes of molly in the driver's side door (within a short arm's reach of Plaintiff when he was sitting in the driver's seat) and elsewhere in Plaintiff's car. Additionally, even though Plaintiff initially claimed he knew nothing about the pills, having just gotten his car back from whoever stole it, he then assured the Officers that the pills were molly, not fentanyl, and he told Officer Hanna at least twice that he could just toss the pills. Plaintiff's

17

willful identification of the pills as "molly," along with the words "you can throw it," indicated his knowledge that the pills contained a controlled substance. [36-2] at 4:00–4:45.[10] The Officers' search of Plaintiff's car, which turned up several additional caches of pills, also bolsters the finding that the officers had probable cause to arrest Plaintiff for possession of a controlled substance and institute criminal proceedings against him. The existence of such probable cause precludes Plaintiff from plausibly stating a claim for malicious prosecution.

## V.     Conclusion

For the reasons explained above, this Court grants Defendants' motion to dismiss, [25], and dismisses Plaintiff's complaint; and because the record (including the body worn camera footage) demonstrates that any further amendment would be futile, there is no basis to grant Plaintiff further opportunity to amend, and this case is dismissed with prejudice. *See, e.g., Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015).

Dated: March 23, 2026                              Entered:

                                                   John Robert Blakey
                                                   United States District Judge

---

[10] The fact that the pills turned out to be fentanyl and heroin rather than molly remains irrelevant to the probable cause analysis. Plaintiff was charged with possessing a controlled substance, and "molly" constitutes a controlled substance under 720 Ill. Comp. Stat. 570/204. 720 ILL. COMP. STAT. 570/204(d)(2). Police only need probable cause to initiate criminal prosecution, "which is well short of certainty." *Hernandez*, 455 F.3d at 775 ("Police are entitled to act on information that may be inaccurate and let the court determine whether to credit a suspect's claim of innocence"); *see also Askew v. City of Chicago*, 440 F.3d 894, 896 (7th Cir. 2006) ("The Constitution permits [police officers] to initiate the criminal process and leave the sifting of competing claims and inferences to detectives, prosecutors, judges, and juries in the criminal prosecution.").

18